UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL TORRES., <br><br> Plaintiff, <br><br> v. <br><br> ISMAIL PATEL, et.al., <br><br> Defendants. | Case No.: 1:18-cv-00188-NONE-SAB (PC) <br><br> FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> [ECF No. 48] |

Plaintiff Miguel Torres is appearing *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed June 25, 2020.

**I.**

**RELEVANT BACKGROUND**

This action proceeds on Plaintiff's first amended complaint against Defendants Patel, Ulit, Manasrah, Spaeth and Serda, in their individual capacities, for deliberate indifference in violation of the Eighth Amendment.

Defendants filed an answer to the first amended complaint on March 4, 2019.

After an unsuccessful settlement conference, the Court issued the discovery and scheduling order on June 18, 2019.

As previously stated, on June 25, 2020, Defendants filed the instant motion for summary judgment. Plaintiff filed an opposition on August 10, 2020, and Defendants filed a reply on August

17, 2020.  Accordingly, Defendants' motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d at 942 (quotation marks and citation omitted).

## III.

## DISCUSSION

**A.     Summary of Plaintiff's First Amended Complaint**

Plaintiff alleges that Dr. Patel and Dr. Ulit were deliberately indifferent to a serious medical need by not treating his pain following surgery, and preventing him from participating in physical therapy and daily activities.  Further, Dr. Patel and Dr. Ulit did not treat Plaintiff's elevated blood pressure on

2

numerous occasions. Dr. Patel and Dr. Ulit also intentionally misrepresented Plaintiff's condition, influencing other medical care providers to insufficiently treat Plaintiff.

Plaintiff further alleges that Dr. Ulit and Defendant Manasrah were deliberately indifferent to Plaintiff's hypertension and related symptoms and complications by deliberately failing to provide him with prescribed medications and ignoring his symptoms.

On or about November 17, 2016, Plaintiff submitted a 602 HC Appeal regarding the lack of treatment for his hypertension and related symptoms, which were at the state of a medical emergency. Plaintiff alleges that Defendants Spaeth and Serda decided not to process Plaintiff's appeal as an emergency, delaying treatment.

Plaintiff also alleges that Dr. Patel failed to treat and delayed treatment for issues with Plaintiff's mobility and ambulation, including injuries that led to Plaintiff being unable to walk for a time. These matters continue through the date of the amended complaint, as Dr. Patel is still Plaintiff's primary care provider. These issues also involved the falsification of medical records.

///
///
///
///
///
///
///
///
///

**B.     Statement of Undisputed Material Facts**[1,2,3]

1.     After Plaintiff was discharged from an outside hospital, Nurse Practitioner (NP) Manasrah reviewed Plaintiff's discharge orders on August 27, 2016, and ordered that Plaintiff be retained for observation in the Correctional Treatment Center (CTC) for five days for treatment and monitoring of his second degree burns.[4]  (Declaration of Manasrah [Manasrah Decl.] ¶ 5, Ex. A.)

2.     On September 9, 2016, Dr. Patel provided medical care for Plaintiff's second degree burns including orders to continue daily sterile dressing changes and cleaning for Plaintiff's burned feet until completely healed.  (Declaration of Patel [Patel Decl.] ¶ 8, Ex. C.)

3.     On September 20, 2016, Dr. Patel evaluated the healing process for Plaintiff's second degree burns, continued Plaintiff's prescription for Tylenol 3, and submitted Requests for Service (RFS) for orthotic shoes and physical therapy.  (Patel Decl. ¶ 9, Ex. D.)

4.     On September 2, 2016, Dr. Ulit provided Plaintiff with a walker to assist with ambulation

---

[1] Hereinafter referred to as "UMF."

[2] Plaintiff disputes several of Defendants' statements of facts, but fails to cite to the record or exhibit for evidentiary support.  The Rand notice provided by Defendants specifically stated that in responding to Defendants' statement of undisputed facts, "Local Rule 260(b) requires you to "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  (ECF No. 48-1 at 2:17-21; see also Fed. R. Civ. P. 56(c)(1)(A).  "If a party fails to dispute a fact properly by offering evidence that does not contradict the proffered fact, the Court will deem the fact undisputed for purposes of the motion." (Id. at 5 (citing Fed. R. Civ. P. 56(e)(2); L.R. 56-3).)  "If either party fails to provide a pincite to the supporting evidence, the Court will deem the proffered fact (or dispute) unsupported." (Id. at 6 (citing Christian Legal Soc. v. Wu, 626 F.3d 483, 488 (9th Cir. 2010).)  Unless the Court was able to identify how the cited evidence disputed the fact without a pincite, the Court deemed the fact undisputed. See George v. Morris, 736 F.3d 829, 837 (9th Cir. 2013) ("We will not do [a litigant's] work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for factual support.")  The Court only discusses the disputes of facts where adequate evidence was provided for the Court to understand what in the purportedly undisputed fact was being disputed.

[3] Plaintiff also disputes numerous facts on the ground that Defendants failed to follow a proper treatment plan and did not provide adequate medications.  However, Plaintiff's disagreement with the treatment plan or medication's effectiveness is not a dispute as to the facts stated.  Plaintiff cannot create a disputed of fact by merely challenging the credibility of the defendants' facts without citing to any contradictory evidence.  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983).  Nor is a fact disputed because Plaintiff disagrees with it.  Plaintiff must point to specific evidence that creates a dispute of fact.  The Court will only address those issues raised by Plaintiff that contain actual disputes as to the fact set forth.

[4] Plaintiff contends that Dr. Sao, and not Defendant Manasrah ordered Plaintiff retained in the CTC.  However, the progress notes, dated August 25, 2016, simply indicate that Plaintiff was admitted in the CTC and evaluated by Dr. Sao.  (Patel Decl. ¶ 5, Ex. A.)  Accordingly, this statement is undisputed as presented.

4

while he recovered from his second degree burns.  (Declaration of Ulit [Ulit Decl.] ¶ 5, Ex. A.)

5. On September 30, 2016, Dr. Patel treated Plaintiff's second degree burns and ordered daily sterile dressing changes, Tylenol 3 for pain, and a prescription for Nortriptyline to address the neuropathic pain Plaintiff reported.  (Patel Decl. ¶ 10, Ex. E.)

6. After Plaintiff was discharged from an outside hospital on October 8, 2016 for non-cardiac chest pains, he returned to the CTC at Kern Valley, where he was evaluated telephonically by NP Manasrah.  (Manasrah Decl. ¶ 6, Ex. B.)

7. Following an evaluation, NP Manasrah discharged Plaintiff from the CTC and ordered a follow up appointment with Dr. Patel.  (Manasrah Decl. ¶ 6, Ex. B.)

8. On October 11, 2016, Dr. Patel treated Plaintiff's second degree burns and continued Plaintiff's prescription for Tylenol 3 for pain.  (Patel Decl. ¶ 11, Ex. F.)

9. As for the chest pain, Dr. Patel discussed the hospital's findings ruling out coronary syndrome and also discussed the results of Plaintiff's chest x-ray and Electrocardiogram (EKG), which were both unremarkable.  (Patel Decl. ¶ 11, Ex. F.)

10. On October 24, 2016, Dr. Patel treated Plaintiff during an appointment to discuss the neuropathic burning sensation or pain in his feet.[5]  (Patel Decl. ¶ 12, Ex. G.)

11. On November 4, 2016, Dr. Ulit interviewed Plaintiff about his requests for the medications that he received at the outside hospital during an interview for Plaintiff's 602 health care appeal.  (Ulit Decl. ¶ 6, Ex. B.)

12.  Dr. Ulit explained to Plaintiff that those medications were not medically indicated for him outside of the hospital and provided Plaintiff with over the county Tylenol for pain.  (Ulit Decl. ¶ 6, Ex. B.)

13. Plaintiff was seen again by Dr. Patel on November 23, 2016, to follow up on his

---

[5] Plaintiff attempts to dispute this fact by stating Dr. Ulit falsely claimed Plaintiff was able to stand and walk and went to the appointment without a walker.  However, Plaintiff's statement of additional facts does not dispute the statement of fact as presented by Defendant.

second degree burns.[6]  (Patel Decl. ¶ 13, Ex. H.)

14. During that appointment, Dr. Patel also treated Plaintiff's foot pain.[7]  (Patel Decl. ¶ 13, Ex. H.)

15. On December 13, 2016, Dr. Patel treated Plaintiff's second-degree burns and blood pressure.[8]  (Patel Decl. ¶ 14, Ex. I.)

16. During that appointment, Dr. Patel also discussed the status of the order for orthotic shoes and Plaintiff's continued progress with physical therapy for his feet.  (Patel Decl. ¶ 14, Ex. I.)

17. On January 17, 2017, Dr. Patel treated Plaintiff after his completion of physical therapy for his feet.  (Patel Decl. ¶ 15, Ex. J.)

18. On February 8, 2017, Dr. Patel treated Plaintiff after he reported shortness of breath, dizziness a few weeks prior.[9]  (Patel Decl. ¶ 16, Ex. K.)

19. After the appointment, Dr. Patel continued Plaintiff's blood pressure medications and advised Plaintiff to return to medical if he experienced any shortness of breath.  (Patel Decl. ¶ 16, Ex. K.)

---

[6] Plaintiff disputes Defendant's original statement by stating Defendant Patel did not provide any treatment for Plaintiff's hypertension and did not order any blood pressure checks.  A review of Dr. Patel's progress notes supports Plaintiff's contention.  (Patel Decl., Ex. H.)

[7] Plaintiff claims that Defendant Patel did not provide any treatment for Plaintiff's foot pain at this appointment.  However, Dr. Patel's progress notes, dated November 23, 2016, reflect that he referred Plaintiff to Dr. Freeman follow up examination and recommendation.  (Patel Decl., Ex. H.)  Dr. Patel also submitted an additional referral for physical therapy.  (Id.)  It was also noted that Plaintiff was on the waiting list to receive orthotic shoes and they would consider a cane instead of a walker after completion of physical therapy.  (Id.)  Therefore, this statement is undisputed.

[8] Plaintiff contends that no treatment for his burns was provided at this appointment, and it was not until Plaintiff saw Dr. Sao on December 21, 2016, that he received any treatment for the hypertension.  However, Dr. Patel's progress notes, dated December 13, 2016, note that Plaintiff was already placed on blood pressure check 2 times per week for 3 weeks to evaluate Plaintiff's condition, and it was noted that Plaintiff denied any chest pain or shortness of breath on that date.  (Patel Decl. Ex. I.)  In addition, Dr. Patel noted that Plaintiff was referred to orthopedic shoes and had his measurements taken on November 29, 2015, and was on the waiting list.  (Id.)  Plaintiff's claim that he did not receive medication for hypertension until December 2016, does not dispute the facts as presented by Defendant.

[9] Plaintiff contends that he informed Dr. Patel that Dr. Sao had ordered his medications increased on January 11, 2017, but the order had not been followed.  Dr. Patel refused to resubmit the order for the medication to be increased.  However, Plaintiff fails to present any evidence that Dr. Patel was required to follow Dr. Sao's recommendation, and whether additional increased medication was necessary does not create a dispute of the facts stated.  It remains undisputed that on February 8, 2017, Dr. Patel treated Plaintiff for shortness of breath and dizziness.  (Patel Decl., Ex. K.)

20. On May 3, 2017, Dr. Patel treated Plaintiff's hypertension and foot pain and there was no evidence of any objective injury to Plaintiff's feet.[10]  (Patel Decl. ¶ 17, Ex. L.)

21. At the conclusion of the appointment, Dr. Patel ordered x-rays and submitted a referral to a podiatrist to rule out Morton Neuroma for Plaintiff's foot pain.  (Patel Decl. ¶ 17, Ex. L.)

22. On July 17, 2017, Dr. Patel treated Plaintiff's complaints of foot pain and submitted a request for an MRI examination of Plaintiff's right foot.  (Patel Decl. ¶ 18, Ex. M)

23. On August 3, 2017, Dr. Patel referred Plaintiff to a podiatrist to discuss his foot pain. (Patel Decl. ¶ 19, Ex. N.)

24. On October 3, 2017, Dr. Patel treated Plaintiff's hypertension and foot pain and discussed his follow up with the Medical Administration Committee (MAR) to get the request for an MRI of Plaintiff's foot approved.  (Patel Decl. ¶ 20, Ex. O.)

25. On November 1, 2017, Dr. Patel discussed the results of Plaintiff's MRI examination for foot pain and the ongoing management of Plaintiff's hypertension and blood pressure medications. (Patel Decl. ¶ 21, Ex. P.)

26. On December 12, 2017, Dr. Patel treated Plaintiff's foot pain and discussed his recommendations for strengthening exercises.  (Patel Decl. ¶ 22, Ex. Q.)

27. On December 21, 2017, Dr. Patel treated Plaintiff's foot pain after his appointment with Dr. Sill, the podiatrist. (Patel Decl. ¶ 23, Ex. R.)

28. At the conclusion of the appointment, Dr. Patel submitted an urgent referral for physical therapy.  (Patel Decl. ¶ 23, Ex. R.)

29. On January 29, 2018, Dr. Patel treated Plaintiff's foot pain and discussed the specialist's recommendation for a neurology consultation, a consultation with an orthopedist, and his use of crutches to ambulate.  (Patel Decl. ¶ 24, Ex. S.)

30. Dr. Patel also reviewed the updated x-ray examination results for Plaintiff's right foot,

---

[10] Plaintiff attempts to dispute this fact claiming that he presented evidence that he was not able to walk.  However, Dr. Patel's progress notes, dated May 3, 2017, clearly reflect Plaintiff's subjective complaints of reported pain and a rash on his right foot which made it difficult for him to walk.  (Patel Decl. ¶ 17, Ex. L.)

1   taken on January 23, 2018, that did not show any acute abnormality or significant change and submitted

2   a referral to neurology and set a follow up appointment after the next podiatry visit.  (Patel Decl. ¶ 24,

3   Ex. S.)

4         31.    On March 12, 2018, Dr. Patel treated Plaintiff's foot pain after his February 26, 2018

5   appointment with neurology.  (Patel Decl. ¶ 25, Ex. T.)

6         32.    At the conclusion of the appointment, Dr. Patel requested an ultrasound of Plaintiff's foot

7   and set follow up appointments with podiatry and neurology.  (Patel Decl. ¶ 25, Ex. T.)

8         33.    On March 20, 2018, Dr. Patel treated Plaintiff's foot pain and Plaintiff reported that the

9   medication Nortriptyline was helping him walk with less pain.  (Patel Decl. ¶ 26, Ex. U.)

10         34.     At the conclusion of the appointment, Dr. Patel increased Plaintiff's prescription for

11   Nortriptyline.[11]  (Patel Decl. ¶ 26, Ex. U.)

12         35.    On March 26, 2018, Defendant Patel treated Plaintiff's foot pain and Plaintiff reported

13   that he no longer wanted to take Nortriptyline in the morning.  (Patel Decl. ¶ 27, Ex. V.)

14         36.    At the conclusion of the appointment, Dr. Patel cancelled Plaintiff's prescription for the

15   morning dose of Nortriptyline as requested.  (Patel Decl. ¶ 27, Ex. V.)

16         37.    On April 25, 2018, Dr. Patel treated Plaintiff's foot pain and discussed the neurologist's

17   recommendation to prescribe Neurontin to treat Plaintiff's neuropathic pain.  (Patel Decl. ¶ 28, Ex. W.)

18         38.    At the conclusion of the appointment, Dr. Patel ordered a nerve conduction study as

19   recommended by neurology and set a follow up appointment to review the results of that study.  (Patel

20   Decl. ¶ 28, Ex. W.)

21         39.    On May 16, 2018, Dr. Patel treated Plaintiff's foot pain and Plaintiff reported that he

22   could walk a few steps and felt less pain in his foot and no pain in his right knee, but he still used crutches

23   for ambulation.  (Patel Decl. ¶ 29, Ex. X.)

24         40.    On June 25, 2018, Dr. Patel prescribed Plaintiff an antibiotic medication to treat an

25

26

---

27   [11] Plaintiff disputes Defendant's Dr. Patel's statement that he also provided another prescription for Neurontin.  (Patel
28   Decl. ¶ 26.)  Plaintiff's contention is supported by Dr. Patel's progress notes, dated March 20, 2018, which do not reflect a prescription for Neurontin.  (Patel Decl., Ex. U.)

infected ingrown toenail, supplies to clean the infected area, and submitted an urgent referral for him to podiatry. (Patel Decl. ¶ 30, Ex. Y.)

41. On June 27, 2017, Dr. Spaeth denied Plaintiff's request for emergency processing of health care appeal, log number KVSP-HC-17038402, because it did not meet the regulatory criteria.[12] (Declaration of Spaeth [Spaeth Decl.] ¶¶ 4-5, Ex. A.)

42. Defendant Serda was responsible for screening inmate health care appeals for compliance with Title 15 regulations. (Declaration of Serda [Serda Decl.] ¶ 4, Ex. A.)

43. However, because she is not a licensed medical professional, Defendant Serda did not, and could not, decide whether any given inmate appeal was entitled to emergency processing under California Code of Regulations, Title 15, Section 3084.2(e) or 3084.9(a). (Serda Decl. ¶ 4, Ex. A.)

### C. Analysis of Defendants' Motion

Defendants Patel, Ulit, and Mansrah argue that they diligently treated Plaintiff's second-degree burns. Defendants Serda and Spaeth argue that they were deliberately indifferent to Plaintiff's serious medical needs in the handling of a health care appeal submitted for emergency review.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness,

---

[12] Plaintiff contends that he was referring to Appeal log number HC-16037910, in relation to the untreated hypertension. Plaintiff's argument will be addressed in the analysis section regarding the merits of his claim.

which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

There is no dispute that plaintiff had a serious medical need while an inmate at Kern Valley State Prison between August 2016 and June 2018. Therefore, there is no genuine issue of material fact as to the first prong of plaintiff's deliberate indifference claim. The only remaining issue is whether there is a genuine issue of material fact concerning Defendants' failure to respond to plaintiff's medical needs in a manner that caused him harm in violation of the Eighth Amendment. Jett, 439 F.3d at 1096.

1. Defendants Patel, Ulit and Mansrah

Plaintiff alleges that Defendants Patel, Ulit and Mansrah were deliberate indifferently to his serious medical needs by refusing to provide him medication, physical therapy, and treatment for second-degree burns on his lower extremities.

**a.      Treatment for Second Degree Burns**

It is undisputed that after Plaintiff was discharged from an outside hospital on August 27, 2016, Defendant NP Manasrah ordered that Plaintiff be retained for observation in the Correctional Treatment Center (CTC) for five days for treatment and monitoring of his second degree burns. (UMF 1.) It is also undisputed that Defendant Dr. Patel, Plaintiff's primary care physician, provided Plaintiff with medical care and treatment for his second degree burns on several different occasions. (UMF 2-3, 5, 8-10, 14-40.) Indeed, Plaintiff was seen by Dr. Patel on September 19, 2016, September 20, 2016, September 30, 2016, October 11, 2016, October 24, 2016, November 23, 2016, December 13, 2016, January 17, 2017, May 3, 2017, July 17, 2017, August 3, 2017, October 3, 2017, November 1, 2017, December 12, 2017, January 29, 2018, March 12, 2018, March 20, 2018, March 26, 2018, April

1  25, 2018, May 16, 2018, and June 25, 2018. (UMF 3, 5, 8, 10, 13, 15, 16, 17, 20, 21, 22, 23, 24, 25,
2  26, 27, 28, 29, 30, 31, 32, 33, 35, 37, 38, 39, 40.) At these appointments, Dr. Patel provided Plaintiff
3  with various different medical treatments, ordered various medications, ordered diagnostic testing, and
4  submitted referrals to specialists. (Id.)

It is further undisputed that Defendant Dr. Ulit only treated Plaintiff on two different occasions during the relevant time period. (UMF 4, 11, 12.) On September 2, 2016, Dr. Ulit provided Plaintiff with a walker to assist with ambulation while he recovered from his second degree burns. (UMF 4.) On November 4, 2016, Dr. Ulit interviewed Plaintiff about his requests for medications that he received at the outside hospital during an interview for Plaintiff's 602 health care appeal. (UMF 11.) However, Dr. Ulit explained to Plaintiff that the medications requested were not medically indicated for him outside of the hospital and provided Plaintiff with over the counter Tylenol for pain. (UMF 12.)

The Court finds that Defendants have provided sufficient evidence to satisfy their initial burden of demonstrating that they were not deliberately indifferent in treating Plaintiff's second degree burns and pain. Plaintiff was examined several occasions, and Defendants made objective findings based upon their examinations, and determined an appropriate course of treatment based upon their examinations. The burden, therefore, shifts to Plaintiff to establish a genuine dispute of material fact regarding whether Defendants were deliberately indifferent in treating Plaintiff's second degree burns.

Plaintiff claims that Dr. Patel was deliberately indifferent because he did not continue and prescribe the opiate pain medication that was given at the hospital following his surgeries for the second degree burns does not demonstrate deliberate indifference. Dr. Patel declares that "Percocet, the pain medication that Torres received at the outside hospital, is an Opioid medication that generally cannot be prescribed to inmate patients in state prison. Further, opiates (which are highly addictive) were not, in my opinion, indicated for the treatment of the pain from [Plaintiff's] burns; Tylenol 3 was sufficient. There was also no medical need to continue his prescription for blood thinner medications that he received at the outside hospital. Blood thinners are medications that are prescribed to patients that are confined to hospital beds to prevent the formation of blood clots. At Kern Valley, [Plaintiff] was not confined to a hospital bed." (Patel Decl. ¶ 7.) It is clear that Dr. Patel exercised his

11

professional medical opinion in prescribing Tylenol 3 for Plaintiff's pain, and there is no showing this constituted deliberate indifference on the part of Dr. Patel.  See, e.g., Shiira v. Hawaii, No. 15-16338, slip op. at 1, 4 (9th Cir. Nov. 16, 2017) (affirming summary judgment for defendants who deprived plaintiff of methadone and Percodan but offered over-the-counter pain medication and treatment for potential detoxification symptoms; plaintiff's expert did not testify that offering alternative pain medications would be medically inappropriate); Fausett v. LeBlanc, 553 Fed.Appx. 665 (9th Cir. 2014) (affirming summary judgment for defendants where doctors did not provide Valium ordered in hospital-discharge instructions after spinal-fusion surgery and instead provided substitute medicine and other pain medications); Gauthier v. Stiles, 402 Fed.Appx. 203 (9th Cir. 2010) (affirming dismissal; plaintiff's disagreement with the dosage and type of pain medication administered after surgery not deliberate indifference); Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) (reversing denial of defense motion for summary judgment; jail health-care provider's decision to provide synthetic opioid rather to provide opioids or contact the doctor who prescribed the opioids before incarceration was not deliberate indifference); Brauner v. Coody, 793 F.3d 493, 497 (5th Cir. 2015) (although plaintiff stated that he required more pain relief than the over-the-counter and prescription medications provided by prison doctors for his undisputed bone infection with open sores, "these are 'classic example[s] of a matter for medical judgment' " and, as a matter of law, do not amount to deliberate indifference); Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (district court properly dismissed claim that prison officials were deliberately indifferent in not prescribing medication stronger than Motrin for plaintiff's broken wrist because the medication decision was a matter of medical judgment); Meuir v. Green Cnty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (summary judgment properly granted for defendants on inmate's claim that nurses were deliberately indifferent in prescribing Motrin but not medicated mouthwash for bleeding gums); Id. at 119 ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment").

Plaintiff also claims that between May 16, 2017 and July 17, 2017, Dr. Patel did not treat Plaintiff for his second degree burns. (Opp'n at p. 21.)[13] However, on May 3, 2017, Dr. Patel ordered x-rays and submitted a referral to a podiatrist to rule out Morton Neuroma for Plaintiff's foot pain. (UMF 20-21.) Indeed, Plaintiff acknowledges in his opposition, he was examined at the podiatry clinic by Dr. Sill on May 16, 2017, who recommended an MRI and referral back to podiatry on June 13, 2017. (Opp'n at p. 21 ¶ 54, Ex. W.) However, it remains undisputed that on July 17, 2017, Dr. Patel treated Plaintiff again for his complaints and referred him for an MRI. (UMF 22.) The mere fact that Plaintiff was not referred back to the podiatrist on June 13, 2017, does not demonstrate deliberate indifference on the part of Dr. Patel or any other medical professional. There is simply no evidence that Dr. Patel intentionally interfered or denied a referral back to podiatry in June 2017. In fact, on August 3, 2017, Dr. Patel referred Plaintiff to a podiatrist to discuss his foot pain. (UMF 23.) Even if there was a slight delay, Plaintiff has not demonstrated that any delay lead to further harm. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Furthermore, even assuming, without finding, that Dr. Patel was somehow negligent, negligence is insufficient to demonstrate deliberate indifference. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) ("Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support [deliberate indifference]."); see Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); see also Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d at 1082 ("Even gross negligence is insufficient to establish deliberate

---

[13] All references to pagination of Plaintiff's opposition pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

indifference to serious medical needs."). Moreover, even assuming, without finding, that Dr. Patel failed to diagnose a certain condition, a prison official cannot be held liable for the failure to alleviate a risk of harm that he/she should have been aware of but was not. Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.").

Based on the undisputed evidence, Defendants have demonstrated that they were not deliberately indifferent to Plaintiff's medical needs in relation to his second degree burns, and summary judgment should be granted.

**b.      Treatment for Hypertension**

Plaintiff further contends that Dr. Patel and Dr. Ulit did not treat Plaintiff's elevated blood pressure on numerous occasions. Dr. Patel and Dr. Ulit also intentionally misrepresented Plaintiff's condition, influencing other medical care providers to insufficiently treat Plaintiff. Plaintiff also alleges that Dr. Ulit and Defendant Manasrah were deliberately indifferent to Plaintiff's hypertension and related symptoms and complications by deliberately failing to provide him with prescribed medications and ignoring his symptoms. However, contrary to Plaintiff's contentions, his medical record demonstrates that Defendants provided him with regular treatment and care during the relevant time period. (UMF 6-12, 15, 18-20, 24-25.)

It is undisputed that Defendant Manasrah only encountered Plaintiff telephonically on October 8, 2016, when he reviewed Plaintiff's discharge orders from the outside hospital. (UMF 6-7.) After reviewing Plaintiff's medical records, Manasrah determined that the outside hospital found that Plaintiff's chest pains were non-cardiac. Therefore, Manasrah discharged Plaintiff back to his housing unit and set a follow up appointment with his primary care physician within three to five days. (Id.)

After Plaintiff returned to his housing unit, Dr. Patel provided Plaintiff with blood pressure monitoring, medications, and ongoing treatment for his blood pressure throughout the relevant period of time. (UMF 9, 15, 18-20, 24-25.) More specifically, on October 11, 2016, Dr. Patel treated Plaintiff for a follow up appointment after his October 6, 2016 hospitalization for chest pain. (Patel Decl. ¶ 11,

Ex. F.) They discussed the hospital's findings ruling out coronary syndrome and also discussed the results of his chest x-ray and Electrocardiogram (EKG), which were both unremarkable. (Id.) It was noted that Plaintiff's blood pressure was within normal range, therefore, Dr. Patel ordered blood pressure checks three times per week for two weeks to monitor his blood pressure and rule out hypertension. (Id.) On December 13, 2016, Dr. Patel treated Plaintiff again for blood pressure, and Plaintiff reported that he received blood pressure medications at the outside hospital but denied any chest pains or shortness of breath. (Patel Decl. ¶ 14, Ex. I.) They discussed Plaintiff's current blood pressure and his ongoing blood pressure checks to rule out hypertension. (Id.)

On February 8, 2017, Dr. Patel treated Plaintiff after he reported shortness of breath and dizziness a few weeks prior. (Patel Decl. ¶ 16, Ex. K.) It was noted that Plaintiff denied having a fever, chills, or any flulike symptoms and reported that those symptoms did not repeat after that one episode. (Id.) They discussed Plaintiff's current prescriptions for Norvasc and Lisinopril to manage his blood pressure and that it was currently at goal. (Patel Decl. ¶ 16, Ex. K.) After the appointment, Dr. Patel continued Plaintiff's prescriptions for his blood pressure medications and advised him to return if he experienced any shortness of breath. (Id.)

Plaintiff contention that on February 8, 2017, he informed Dr. Patel that Dr. Sao had increased his medication in January and he failed to resubmit the order, does not create a genuine issue of material fact. Even assuming the validity of Plaintiff's contention, he has not demonstrated deliberate indifference on the part of Defendant Dr. Patel. The law is clear that "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987. "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id. Here, it is undisputed that on February 8, 2017, Dr. Patel continued Plaintiff's blood pressure medications and advised him to return if he experienced shortness of breath. There is simply no evidence that Dr. Patel was deliberately indifferent by continuing Plaintiff on the same medication. This is particularly so given that Dr. Patel noted Plaintiff's blood pressure was presently at goal. (Patel Decl. ¶ 16, Ex. K.)

On May 3, 2017, Dr. Patel treated Plaintiff during a chronic care appointment for his hypertension. (Patel. Decl. ¶ 17, Ex. L.) They discussed Plaintiff's blood pressure management medications, and it was noted that Plaintiff was currently taking Amlodipine, Lisinopril, and aspirin to treat his hypertension. (Id.) At the conclusion of the appointment, Dr. Patel continued Plaintiff on the medications he was already taking. (Id.)

On August 3, 2017, Dr. Patel treated Plaintiff for hypertension. (Patel Decl. ¶ 19, Ex. N.) Plaintiff denied any acute symptoms of hypertension and they discussed his ongoing blood pressure medications. (Id.)

With regard to Dr. Ulit, his only interaction with Plaintiff following his hospitalization for chest pains was a first level interview on Plaintiff's health care appeal on November 4, 2016. (UMF 11-12.) Plaintiff requested Tylenol No. 3, Vitamin C, and blood thinning medication. (Ulit Decl. ¶ 6, Ex. B.) However. Dr. Ulit determined that these medication were not medically indicated for him outside of the hospital bed setting. (Id.) Plaintiff's appeal was partially granted as Plaintiff was given over the counter Tylenol for pain and advised to discuss his medical care issues with Dr. Patel, his primary care physician. (Id.) Therefore, Dr. Ulit did not discuss Plaintiff's treatment or medications for managing his blood pressure because that was not the focus of Plaintiff's health care appeal. (Id.)

Defendants' have met their initial burden of demonstrating that they were not deliberately indifferent in treating Plaintiff's hypertension. Plaintiff was examined several occasions, and Defendants made objective findings based upon their examinations, and determined an appropriate course of treatment based upon their examinations. The burden, therefore, shifts to Plaintiff to establish a genuine dispute of material fact regarding whether Defendants were deliberately indifferent in treating Plaintiff's hypertension.

Plaintiff argues that Defendants failed to order the prescribed medications as reflected in the discharge order issued by Dr. Rhoda after his discharge October 7, 2016. Although the discharge order by Dr. Rhoda listed Amlodipine and Lisinopril as prescribed medications and recommended to stop taking Tylenol 3, the order also reflects that Plaintiff's condition was stable, and Plaintiff was instructed to follow-up with his primary doctor within the week to make any needed adjustments in his medication. (Opp'n, Ex. G.) It is undisputed that Defendant Manasrah evaluated Plaintiff

16

telephonically on October 8, 2016, and ordered a follow up with Plaintiff's primary care physician, Dr. Patel within three to five days. (UMF 6-7.) It is also undisputed that Plaintiff was evaluated by Dr. Patel on October 11, 2016, Dr. Patel treated Plaintiff for a follow up appointment after his October 6, 2016 hospitalization for chest pain. (Patel Decl. ¶ 11, Ex. F.) They discussed the hospital's findings ruling out coronary syndrome and also discussed the results of his chest x-ray and Electrocardiogram (EKG), which were both unremarkable. (Id.) It was noted that Plaintiff's blood pressure was within normal range, therefore, Dr. Patel ordered blood pressure checks three times per week for two weeks to monitor his blood pressure and rule out hypertension. (Id.) Therefore, based on the evidence presented, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent by failing to provide blood pressure medication(s) because it was within normal range, at that time.

Further, to the extent Plaintiff claims that these Defendants caused a delay in Plaintiff receiving prescriptions to treat his hypertension, Plaintiff has failed to demonstrate that any delay lead to further harm. See Hallett v. Morgan, 296 F.3d at 745-46; Berry v. Bunnell, 39 F.3d at 1057; McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d at 1335); Hunt v. Dental Dep't, 865 F.2d at 200); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d at 407. As described in detail above, Plaintiff's blood pressure was continuously evaluated and monitored from October to December 2016. Although Plaintiff points out that on December 21, 2016, Dr. Sao prescribed Lisinopril and Amlodipine, it was specifically noted that Plaintiff's blood pressure was elevated on this date, with a reading of 177/89. (Opp'n, Ex. R.) In contrast, when Dr. Patel evaluated Plaintiff his blood pressure was within normal range, and his blood pressure was ordered to be checked on a regular basis. (Patel Decl. ¶¶ 11, 14, 16, Exs. F, I, K.) Plaintiff also contends that Dr. Patel failed to increase his prescription of Amlodipine from 5 mg to 10 mg as ordered by Dr. Sao on January 1, 2017. However, it is undisputed that Dr. Patel evaluated Plaintiff on February 8, 2017, and it was noted that Plaintiff's blood pressure was at goal. (Patel Decl. ¶ 16, Ex. K.) Dr. Patel continued Plaintiff's present prescriptions for his blood pressure medications and advised him to return if he experienced any shortness of breath. (Id.) Plaintiff has failed to demonstrate that Dr. Patel's treatment or any lack thereof was deliberately indifferent to a serious medical need. In any event, even assuming that Plaintiff has presented evidence from which a jury could find "that the course of treatment Dr. Patel chose was medically unacceptable under the

17

circumstances," Jackson, 90 F.3d at 332, there is still no genuine issue of material fact in dispute that Patel refused the change or prescribe medication "in conscious disregard of an excessive risk to plaintiff's health." Id. (citing Farmer, 511 U.S. at 836). Rather, Plaintiff's evidence points only to a difference of opinion among medical professionals and himself and Dr. Patel to which medication was appropriate, and as such does not show deliberate indifference. Thus, on this record, there is simply no evidence that Defendant acted with the state of mind necessary to prove a deliberate indifference claim. Even if there was a slight delay Plaintiff receiving an increased dosage of Amlodipine, which may not have even been attributable to Defendant, that does not establish deliberate indifference. See Shapley, 766 F.2d at 407.

Based on the undisputed evidence, Defendants have demonstrated that they were not deliberately indifferent in treating and managing Plaintiff's blood pressure, and summary judgment should be granted.

**c.   Dr. Patel's Treatment of Neuropathic Foot Pain**

As stated above, it is undisputed that Defendants Manasrah and Ulit were not involved with the treatment of Plaintiff's neuropathic foot pain problems. (UMF 1, 4, 6-7, 11-12.) In addition, it is undisputed that Dr. Patel, provided Plaintiff with thorough medical treatment for his complaints of neuropathic foot pain and an ingrown toenail infection throughout the relevant time period. (UMF 21-40.) Plaintiff's disagreement with Dr. Patel's treatment is not sufficient to demonstrate deliberate indifference, and summary judgment should be granted.

2.   Defendants Serda and Spaeth

It is undisputed that Defendant Serda is not a licensed health care professional. (UMF 43.) Although she is responsible for screening inmate health care appeals, she is not qualified to determine whether an inmate's health care appeal meets the standard for emergency review. (UMF 42-43.) In any event, it is undisputed that Defendant Serda processed the appeal and assigned it to Dr. Sao.

Dr. Sao determined that Plaintiff's health care appeal, log number, KVSP-HC-17038402, did not meet the criteria for emergency processing. (Spaeth Decl. ¶ 4, Ex. A.) Dr. Sao reviewed Plaintiff's appeal, which included requests for a cane or crutches, a consultation with an outside specialist, to address his medical issues, and for basic medical care before making that determination.

(Id.) After Dr. Sao rendered a decision on Plaintiff's appeal at the first level of review, Dr. Spaeth reviewed the findings and partially granted Plaintiff's requests for basic medical care in the health care appeal at the second level of review. (UMF 41.) Plaintiff's disagreement with non-Defendant Dr. Sao's or Defendant Dr. Spaeth's decisions, does not give rise to the level of deliberate indifference. Sanchez, 891 F.2d a 242.

In his opposition, Plaintiff contends that appeal, log number, KVSP-HC-16037910, is the relevant appeal that he submitted for emergency processing for his untreated hypertension. (Opp'n at p. 21 ¶ 57, Ex. O.) Plaintiff argues Defendants Serda and Spaeth failed to process the appeal pursuant to the procedures set for in Title 15 of the California Code of Regulations.

Dr. Spaeth declares that a "review of Torres' inmate health care appeal records reveals that I reviewed one of his health care appeals, log number KVSP-HC-17038402, to determine whether it qualified for emergency processing during the relevant period." (Spaeth Decl. ¶ 4.) However, even assuming Plaintiff requested emergency processing of the appeal and it was denied, the appeal was processed and assigned to Dr. Sao at the first level of review, and then assigned to Defendant Dr. Spaeth at the second level of review. (Opp'n, Ex. O.) Plaintiff has simply failed to demonstrate deliberate indifference by either Defendant. Indeed, "it is prison officials – not this court – who are the arbiters of whether an internal, administrative appeal is properly classified as an emergency appeal." See Taylor v. Wong, No. 2:17-cv-1758 MCE KJN P, 2019 WL 1078532, at *5 (E.D. Cal. Mar. 7, 2019); (citing Donte v. Swingle, No. 2:10-cv-0299 KJM JFM (PC), 2011 WL 976613, at *5 (E.D. Cal. Mar. 16, 2011) (citing relevant regulations); Hoffman v. Palagummi, No. 2:16-cv-3030-TLN-EFB P, 2019 WL 582353 at 3 (E.D. Cal.) (Feb. 13, 2019). Further, the mere failure to comply with a state regulation does not give rise to a constitutional violation. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir.2009) (violation of "state departmental regulations do not establish a federal constitutional violation." Accordingly, Defendants Serda and Spaeth are entitled to summary judgment.

3. Qualified Immunity

Because the Court has found that Defendants' are entitled to summary judgment on the merits of the claims, the Court need not determine whether they are entitled to qualified immunity.

///

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 3, 2020**

UNITED STATES MAGISTRATE JUDGE